Thank you. Good morning, Your Honors. I'm Russell Babcock from San Diego, and I represent Arthur Nevarez. Counsel, I'm going to ask you a question because I want to get right to what I see as the sticking point of your position from my perspective, and I want to give you a chance to talk to me about that. I would have to say that tentatively it seems to me that there may well have been a conference about a presentation clause violation, but it's hard for me to see any prejudice from that because any error would seem to be harmless beyond a reasonable doubt, given all the other evidence. And if that is the case, then how can you demonstrate a prejudice prong of an ineffective assistance claim? Well, Your Honor, hopefully before I sit down here I'll be able to convince the And I'd like to just kind of go through a couple of factors and discuss them. Number one, the statements, the dad had a big black gun, hit his mother, and said he could kill mom whenever he wanted. That's the gist of the statements. And those statements They didn't find him guilty of anything, and they didn't find the gun enhancements. That's correct, which shows the closeness of this case. I mean, they were considering it. And what would have happened in this case if it hadn't been for the boy's testimony indirectly? Well, I guess what Judge Callahan is getting at it in a more specific way than my question is, if the boy said daddy had a gun and the jury found that that was not proven, then it's pretty clear that they took the child's testimony with quite a grain of salt at a minimum. Well, I'm not so sure that's true, because they requested a readback of the testimony. And also, one of the charges in this case was the threats, the threats to kill with the use of force. And we've got to remember that the 5-year-old child said dad said he could kill mom whenever he wanted. Disconnect. I'm sorry, Your Honor. Wait, you're, you've been muted, Judge Gould. We can't hear you. One second. We've lost you. Okay. Can you try again, Judge Gould? Yeah. Yes. Can you? Yes. Okay, thanks. Well, I have one question for appellant. It was just what cases there are that would suggest that a statement of such a young kid who I thought was maybe 25, a statement of a little kid to the police, if taken down, should be viewed as testimonial? I'm not aware of any specific cases, Your Honor, on that point, nor am I aware of any exceptions to the rule. We know that in sex cases, we routinely require children to get on the stand that are in this age range, and there was no indication that this child did not know what the truth was or anything along those lines. The Confrontation Clause, the Sixth Amendment, does not make any exception for age, except for the fact that if we have a witness who is so young that they don't know truth-telling. It doesn't make an exception for age, but on the other hand, it might bear on whether when police take down what the kid says, you can view that as a testimonial statement. I think, Your Honor, I understand your point, but to the contrary, this kind of a statement, if it's used, is legal dynamite, because, number one, there's a lot of people out there that still believe that children don't lie, and if there's no way to cross-examine that statement, and of course, the government doesn't have to put the statement on. They could use that statement to develop other investigative leads. But you get into all sorts of problems that you have, because the government had the child witness available, and your client excused the witness, and also, on direct appeal, you didn't bring up a Confrontation Clause violation. So, I mean, there's a lot of ways you could have addressed it, if everything that you're saying is true. But you said you excused the child. If you wanted to confront the child, why didn't you? They were ready to call the witness, and you said, no, let him go. Well, I, you know, just to clarify, and I think the Court's aware of this. Well, it's not you. It wasn't me. If it was me, I would be embarrassed to come to this courtroom right now. But you're stuck with the record that you have. And so you're stuck with the issues of procedural bar, of waiver, of no exact case that says that this is testimonial, and then whether it's prejudicial if you get. I'm just saying, Judge Graber mentioned one little thing, but I got a few other issues that I'm sort of, where it looks like you could have done something and didn't, and this isn't under where we are right now. I could see procedural bar. I could see waiver. I could see there's no established law that it was testimonial, and I could see that it wasn't harmless. So I'm just speaking what trouble I see. Okay. Well, there's no doubt in this case, Your Honor, that trial counsel, for my client, completely dropped the ball. This is classic quintessential examples of IAC. And I think that I've cited in the reply brief the best that I could the fact that once the superior court judge examines this and decides to dress this on the merits, this basically dissipates the procedural bar. And there's also law that says that IAC, by its own definition, goes around the procedural bar. I mean, it kind of begs the question, if the trial attorney doesn't do it right. The one thing that Judge Callahan mentioned that remains, regardless of those factors, is the question whether the decision on the merits by the California Employment Bill is objectively unreasonable in analyzing the child's statements as coming within the emergency exception. Well, I think it is completely unreasonable, also for the reasons I pointed out in my brief. There was no longer any kind of an emergency. You know, it's clear from the record in this case that my client had been arrested, and he was arrested somewhere where the 5-year-old boy wasn't. If there was any danger, it was gone. Well, the part of the California decision that I zeroed in on at the beginning is that there was no showing of prejudice because there was strong independent evidence of guilt, including the victim's statements or physical injuries and the discovery of a shotgun in Petitioner's car. And so there's no showing of prejudice. And that's the one I have difficulties saying is not a permissible conclusion on the part of the state court. Well, if I could kind of go back to the issue of the prejudice in this particular case, I think it's very important, and it probably is the biggest hurdle, I think, for us to overcome. At first glance, it might seem, well, we have the victim more or less saying the same thing as the child said, but absolutely not true, because if you look at the statement from the victim, the victim had some real serious credibility on the issue. It doesn't have to be the same. The question is whether the other evidence supporting the conviction, even if not identical evidence, was towards the same end of the conviction. The child's evidence, I think, again, for the reasons I previously indicated, was absolutely the most important in the entire case. The government themselves indicated, I forget what superlative words they used, but they said it was essential testimony or was, excuse me, it's absolutely critical to their case. Well, they're going to say that about everything they put in, because that's their job. But that's, our job is different. We're looking at what the California Court of Appeals said and whether it was a permissible understanding of the trial record. This is not an emergency case? No, I want to stay with the prejudice question. Okay, well, in terms of the prejudice question here, again, I would point out that the statement of the boy almost dovetails a lot of these particular charges. It goes right to it, the threat, you know, that he had hit his mother. He said he could kill mom whenever he wanted. Okay, one of those convictions is for dissuading a witness by use of force or threat. I mean, that's really going right to the ultimate issue there. The DA in opening statement talks extensively about the five-year-old boy's statement and talks again about it very extensively in closing argument and indicating that none of the parties are saying that the boy here is even lying. There's a readback of Officer Flores' testimony, which contains in it the statement of the boy in this particular case. So it seems like all that, you know, it just, it's a real stretch to say that this is harmless, that it certainly had a substantial injurious effect on the verdict, and there is a high probability with a jury that had a mixed result that if they hadn't heard this bombastic testimony of the five-year-old, and I call it testimony because that's what it is, it's uncross-examined testimony, that there's a good chance that the judge would have said something. Kennedy. Counsel, Judge Gould, if you're, when you finish on the harmlessness issue, I have a fairly precise legal question for you about aid, about the AEDPA. I didn't know if you had finished or not. I didn't want you to get to the end of your time without letting you answer my question. Okay. Well, I think that I'm probably pretty much getting toward the end of the reason that I'm going to. Okay. Well, let me frame these two questions for you, and then you can think about it for rebuttal if you don't have a complete answer. First of all, my question is, this is, it is an AEDPA case. Yes, sir. We're reviewing a state prisoner's claim. So the question I have is, is there clearly established Supreme Court authority on whether a young child's statements can be viewed as testimonial within the meaning of the confrontation clause? That's one question. And then a follow-up question, and my understanding, that's why I asked you the question earlier, is I'm not aware of any Supreme Court authority saying that. And then a follow-up question is, it's my understanding the Supreme Court granted cert in a case called Ohio v. Clark in part to resolve whether a kid's statements were testimonial. And if that's true, if they granted cert in a case to address that, wouldn't that suggest that the law isn't clearly established for AEDPA purpose? Your Honor, to address the questions part by part, I think that Crawford in and of itself, and then Washington v. Davis does establish clearly the United States Supreme Court law on confrontation. It doesn't specifically talk about an age range and say that children are included or excluded or individuals over the age of 75 or 80 are included or excluded. It just lays down the constitutional precepts, which are well established. Now, the Ohio v. Clark is more troubling. I'm not aware of that particular situation. I would be glad to submit a supplemental letter brief if the Court wants. I don't know where the Court's going with that, frankly, the U.S. Supreme Court. Well, yeah, but if the Court's taking that, it's what the Court's saying is we need to say something about this. And there's a strong implication from that that it's not clearly established. Either whether there's a split in the circuit or people need direction on this and it's coming up over and over again, then under, you know, AEDPA review, that's bad for you. Can I begin not being particularly aware of that? I may have caught you unaware, and I'm not all that fully aware on that case either, but I did have a note that occurred. Maybe if the panel would agree with me, we could issue an order for supplemental briefing from both sides on the significance of that cert grant. If we decide to do that, we'll let you know in writing. I'd appreciate it. And if this becomes the pivotal point in the resolution of this case, I would certainly request to have an opportunity to look at that closer. You have about a minute and a half if you'd like to reserve it for rebuttal. Okay. I just, I guess to sum up at this point, and then I'll sit down, is to me, this just seems to be classic confrontation. It's, they presented a witness, and there was no opportunity at all to get at that witness, to find out, again, we have these things taking place over a time period. It isn't like it happened all in half an hour or an hour, and it could, we have a 5-year-old child, and we have a 5-year-old child that could have been angry with his father because he witnessed some of these things. And so this is the danger that Crawford goes on and talks about for 4 or 5 pages when they talk about the Sir Walter Raleigh case in trials. So thank you. Thank you, counsel. We'll hear next State. Good morning, Your Honors. Deputy Attorney General Daniel Chang appearing on behalf of Respondent. Petitioner has failed to show that the California court's rejection of his Crawford claim was wrong beyond any possibility for fair-minded disagreement. The California court's conclusion that the statements by Petitioner's son were non-testimonial within the meaning of Crawford and its progeny were not contrary to nor an unreasonable application of clearly established Federal law. Well, just speaking for myself, I have some difficulty with that because what the there's at least a strong suggestion that the emergency was over because I believe the defendant had already been taken into custody at the time, and this was a discussion between a witness and the police who were preparing charges against the defendant. And if this person had been, you know, 25, there would be no question it's testimonial. But I'd like you to talk about the prejudice piece because it seems to me the California court of appeals spent more time on that issue, the prejudice question. Yes, Your Honor. If I could really speak very briefly about your emergency. The Petitioner was under arrest at the time that the Petitioner's son made the statements, but whether there is an emergency existing at the time is not the beginning and the end of the Crawford analysis. What's also required is that the statements at issue be made in response to a formal police interrogation that was established in the holdings of Crawford, of Davis. So you think if this person had been 25 and the exact same conversation had taken place, that wouldn't be a Crawford violation either? Well, if there was, as in this case, if there was absolutely no, if he was 25. Would it be the same result, in your mind, or a different result? It would be the same result. Because if there was no interrogation, as the statements Crawford. The police were investigating. It was clear that they were there taking down notes. Right. Their whole point was to prepare a case against the defendant. Yes, Your Honor. So that's one of the, that's one of the prongs of the analysis, at least in a way that I understand this to be about. Yes, Your Honor. Well, I get a lot of cases with kids, so I can make a couple arguments about kids. I mean, kids can be led easier. So questions with kids, that can go away from it being a blurred out statement. But then on the other hand, children's senses temporally are completely different than adult senses temporally. So whether this was immediate for a child might be a completely different analysis than whether it's immediate for an adult. Right. And I think So I really appreciate you talking about the prejudice prong. Yes, Your Honor. Because if that is correct, all the rest of this very interesting conversation doesn't really give us an answer. Yes, Your Honor. In any event, as the district court correctly reasoned, the admission of the stunned statements could not have had a substantial and injurious effect or influence in determining the jury's verdict under Brecht. Factors to be considered when assessing the harmlessness of a confrontation clause violation includes the importance of the testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony, the extent of cross-examination required, and the overall strength of the prosecution's case. My first point is that contrary to Petitioner's claim, Monica's statement, Monica is the wife of Petitioner. Her statements and testimony did not need to be corroborated. The jury at trial heard the evidence that challenged her testimony, and they evidently believed that much of it was true. Well, but there were also physical injuries and corroboration. Oh, absolutely, Your Honor. Weapons and ammunition that she handed over. Yes. Oh, there was an overwhelming amount of corroboration independent of Petitioner's son's statements. We had Officer Flores's testimony regarding the shotgun that was found in the van moments before Petitioner was arrested and moments before Petitioner's son made those statements. We have phone calls made to Ms. Appiah and Mr. Profitt, both of whom were the neighbors of Monica. The recorded interviews between Monica and the deputy DA, the recorded jailhouse conversations between Petitioner and Monica in which Petitioner expressly admitted that he beat on her, and the recorded conversations between Petitioner and Padilla in which, again, he admitted that he beat her up, and Mr. Caruso's testimony in which he relayed the statements of Petitioner's son, which that testimony   So I think there's a lot of evidence there. One other thing I'd like to mention is that Petitioner counsel argued just now regarding a possibility of IAC of trial counsel. That was never mentioned in his briefs. I would submit to you that that argument raised of appellate counsel. Right. But I think he suggested during our argument that he also suffered IAC of trial counsel. Right, because counsel stipulated to the admission of the child's testimony in this form. That's correct. And that was the reason why the Petitioner's son was cut loose, but that was not raised in his brief. I would argue that that's forfeited. With respect to the two remaining issues regarding procedural bar and the IAC of appellate counsel, I mean, the issues are sort of big. Can you resolve this on procedural bar, or is that sort of awkwardly presented in this case? Because obviously the confrontation clause issue was decided on the merits by the State court. That's correct, Your Honor. I think the Court could decide it based on the procedural bar issue. Much of that issue will sort of be dependent on the validity of the merits of the Crawford claim. I'm sorry, of the IAC of appellate claim. And much of the merits of the IAC of appellate counsel will turn on the merits of the Crawford claim. So they're all sort of daisy-chained together. Right. And because the State court basically went ahead and decided it, ordinarily don't we go ahead and decide it also and not view that as a procedural bar? Yes, Your Honor. Okay. Okay. Counsel, if I could ask you one question. Yes, Your Honor. Do you know whether the cert grant in the case I mentioned, I think it was Ohio v. Crawford, was a grant of cert on the issue, whether a young kid's statement in the circumstances here can be viewed as testimonial? Forgive me, Your Honor. I'm not aware of the details of that grant of cert. However, if the Supreme Court had granted cert on that issue, I would submit to you that that also led support to my argument that there is no clearly established law regarding statements by a person of such a young age as was petitioned in this case, Your Honor. Thank you. Unless the Court has any questions, I would prefer to submit on the briefs. Judge Gould, do you have any further questions for Mr. Gould? No further questions. Okay, thank you. Thank you, Your Honor. Mr. Babcock, you have a little bit of time remaining. Thank you very briefly. I would just reiterate that I think Crawford and the doctrines that we're talking about are extremely well-established with the Supreme Court. There's probably no clear areas of law. There's nothing in the Constitution that talks about specific ages or children or individuals. Now, if the Court is going to carve out something and change the well-established law, that may be what happens here. But at least up to this point, we do have a confrontation clause, and we don't have any exceptions for older or younger individuals in this case. Looking at this from a different perspective, the entire case, how would this case be for a trial attorney? I would submit that as soon as that statement comes in by that 5-year-old kid, it's over. That in and of itself is pretty much really all you need to make the case. Monica becomes surplusage, not the other way around. It's not a question of corroboration in this particular case. It's a question of he was the best witness. And he was the unsworn witness and the unpresent witness. There was lots of evidence about the problems with Monica and her schizophrenia and her inconsistencies, but the 5-year-old kid sealed the deal. And there was no way that defense could rebut that testimony. So for these reasons, it is harmful error, and it should be reversed. Thank you, counsel. If the case just argued is submitted, then we appreciate helpful arguments from both sides.
judges: Graber, Gould, Callahan